We'll proceed now to the sixth case of the morning, the United States v. Cunningham. Ms. Christensen. May it please the Court, Counsel. Good afternoon, Your Honors. My name is Joanna Christensen, and I represent the appellant, Teovonni Cunningham. Rule 32I4A requires the District Court to address the defendant personally in order to permit him to speak and present any information to mitigate the sentence. In Green v. United States, the Supreme Court held that this rule explicitly affords the defendant two rights, to make a statement in allocation and to present any information in mitigation of punishment. In order for this Court to give effect to that second part of Rule 32I, it must allow mitigation to be presented at the sentencing hearing. There should be no limit on the type of mitigation, although there are limits on regular sentencing evidence such as reliability, relevancy, and other courts have suggested that the defendant may not challenge his guilt at a sentencing hearing, which seems to be a pretty reasonable limitation to mitigation evidence. The purposes of the rule are obviously to present mitigation circumstances in order for the District Court to fulfill its mandate under 3553A to consider the defendant's characteristics and personal history. The Supreme Court has also mandated this in Pepper. It must give the court a full picture to make an individualized decision, and it must also preserve the appearance of fairness in the justice system for the defendant to have an adequate time to address the court, equal to the government, if so desired. In this case, the District Court severely limited the mitigation, and Mr. Cunningham did get to present some. However, it was clear that the court was not interested in hearing the majority of what he wanted to present. The court consistently limited Mr. Cunningham's presentation. It was clear the parties had discussed it prior to the sentencing hearing, as I'm sure this Court is aware often happens. You know, I'd like to call some witnesses, Your Honor, and the judge most likely said we don't do that because then he later said that on the record. We don't do that here, which means that depending on which county in the Northern District of Illinois you commit a crime, you may or may not get to call live witnesses at your sentencing hearing. We don't usually have witnesses. My next hearing is in 25 minutes. The parties hurried through it. Each witness, it's not timed to my knowledge, but got less than five minutes to talk. The court consistently said cut it down, wrap it up, and said that it was too emotionally hard for Mr. Cunningham's wife to continue. It is emotionally hard. Sentencing is a very difficult situation. This Court recently said that it's the worst time in a defendant's life is a federal sentencing hearing. Mr. Cunningham was facing more than 15 years in prison. He had never served a significant amount of time in prison before. He had young children who he was going to miss all of their childhood if he received, which he did, 15 years. This Court has repeatedly held that sentencing must not be reduced to a formality, and that must mean that mitigation can be presented. It will not turn into a full-blown evidentiary hearing at every sentencing. As this Court is more than aware, sentencings come in all different shapes and sizes. Some defendants have no mitigation evidence. They have nobody to come speak for them, which speaks volumes in itself. Some of them may only want to do written evidence. Some might want to do testimony. Some might want to do videos, which is occurring more and more. Weren't there about 20 letters? There were. And the judge read them all, and actually it was complimentary. He said he was impressed with what he did when he wasn't stealing guns. Yes, yes. And we're certainly not arguing that the district court didn't take those things into consideration. The court did make comments that he had considered the mitigation. The limit on the live witnesses, however, and defense counsel said, listen, paper is one thing. Seeing someone testify live is an entirely different proposition. As I mentioned in my reply brief, there's no way the government would ever give up live witnesses in favor of paper when we're talking about a case agent or an expert witness, for example. We all know the benefit of live witnesses, and this should also apply to mitigation witnesses. How long did this sentencing hearing actually take? It's a little unclear. Sometimes court reporters put it in the transcript, and I'm not sure it's in this one. It seems it took less than an hour, but less than halfway through they were talking about, I know you have another hearing in 25 minutes. So we know it took at least 25 minutes probably, but there aren't times listed to my knowledge. And again, if the concern is that every sentencing hearing is going to clog up the court's docket, that's certainly a concern. We can't have full day hearings on every sentencing, but that is not what we're asking for certainly. It would not happen in every sentencing, but it does need to be an individualized consideration by the district court, not reduced to a formality. Did the defendant ever make a record as to what he would have said to the judge or had someone said on his behalf to the judge if the judge had permitted more testimony by the witnesses? Is there anything of substance the judge was not aware of because of this? It's a little unclear from the record. The real substance that I can point to is Mr. Cunningham's mother being able to testify. Defense counsel made a comment that she could have shed some light on his difficulties as a child, which continued into adulthood. And I think that that's a particularly salient point here because the judge struggled with Mr. Cunningham's past. And he was arguing, of course, that I have rehabilitated myself. And the judge rightly said, yes, but you committed this offense when you had a wife, or he wasn't married yet, but a significant other and children. So what makes this different? And I think that there could have been more presented. It's one thing for a defendant to be able to talk about . . . How was the matter of the mother resolved finally? It wasn't really resolved. Defense counsel said she could have addressed that, and that's kind of where it went. I think from defense counsel's point of view, it's a very fine balance when a judge tells you we don't do that here, and you don't want to possibly prejudice the judge against your client by raising a huge stink about, I want to do this, I want to do this, Your Honor, no matter what you say. That's certainly not going to be good for your client. He said he wanted to call three witnesses, and he did, right? Right. That was after the limitation was noted, however. And I don't know if it reflects from the record, but there were more than three people there. There were a significant number of people there. And he did call probably the three most important witnesses, but even those witnesses were limited in how long they were allowed to testify and what they were allowed to testify about. I think the pastor probably could have expanded a little bit more about the rehabilitation that he had done within the church. The pastor had known him for a very long time. Did any of these putative witnesses submit letters? Well, there were 20 letters. From the witnesses that were there to be called? The witnesses that testified? That did not. I'm not clear how many of those people were in the courtroom. We just don't know. Right. The court did make a comment about if they're only going to testify about what's in their letter, I don't want to hear a repetition. So, I think we can infer from that that there were probably people in the courtroom who did not testify who had written a letter. Mr. Cunningham had a lot of support. Is there a local rule or anything that says we're not going to hear witnesses out there? No, not that I'm aware of. No standing order from a particular judge or anything? Not that I'm aware of, no. I looked on their website and I did not see it. And that's usually where those standing orders are. My colleague might know because she actually practices in Rockford. This is kind of my way of doing things in this my world. Right. Right. And, you know, I know for a fact that, as the judge noted, in the Chicago Division, witnesses are very freely allowed. And so that may be a divisional thing. The problem is the prejudice to defendants depending on where they commit a crime. Well, we're having this problem all over the country of idiosyncratic judicial customs that are really getting in the way of lawyers trying to put on their cases. You don't have to go to too many judges' meetings to know that. Yeah, I think if the court takes the time to read the law review article I cited called Grace Notes, that's incredibly illuminating about non-capital mitigation and what defense counsel need to do. And it really is on us. I mean, it's our burden to have at sentencing to kind of change the way the system is. And I understand that judges like to have their courtroom run the way they like to have it run. But Mr. Cunningham also had a right and a right to present any information. Are you, in effect, saying the lawyer had inadequate notice of the judge's way of proceeding? I don't know that for a fact. If, in fact, the first time the judge told the lawyer was at the hearing, that may in fact be true. But I don't know enough. Knowing that often judges and judges' staff speak to lawyers prior to the hearing, I don't know when that happened and if it did. Thank you. Thank you, Ms. Christiansen. And we'll hear now from Ms. Busey on behalf of the United States. May it please the court. I am Talia Busey, and I represent the United States in this appeal. I would like to start with the factual issues here and how this sentencing proceeding occurred. The first time, at least that I'm aware of, that the judge was notified that there were going to be witnesses was at the hearing when the defense counsel said, I have three witnesses. That was before the judge ever told the defense counsel that he did not normally have witnesses or anything about keeping witness testimony brief. Defense counsel's first statement was, I have three witnesses. That statement was made at the time where the judge was going through the written materials before him, so understandably the judge said, we'll get to that in a minute, and kept going through the written materials. Once that was done, the judge returned to the witnesses and then explained that it was not his usual practice to have witnesses, but he would allow the defense counsel to have the witnesses here. Defense counsel said I wanted to call three witnesses. Defense counsel then called three witnesses, called the defendant's father-in-law, called the defendant's wife, called the defendant's pastor. All three of those witnesses also submitted letters. Those were among the over 20 letters that were submitted to the judge. The judge received, reviewed, and even commented that he was impressed by. With respect to defendant's mother, defendant's mother was in the courtroom, as defense counsel noted. As your honors are probably aware, it's not uncommon for a defense attorney to reflect that there is support from parents or others at sentencing. That shows the defendant's family support. But at no time did defense counsel say that he wanted to or planned to call the mother as a witness. She was there in support. She had submitted one of the letters. That's among the letters that was given to the judge and the judge reviewed. But at no point did they ask or say they intended to call her. Again, they said three witnesses, and they called all three of them. And defense counsel even mentioned to the court in the beginning that he expected those witnesses to give brief testimony. There is no evidence in the record that the court actually cut off that testimony. The court allowed two of those witnesses to speak freely as long as they wanted. Only once did the court say anything about wrapping it up during a witness's testimony. And the court didn't say wrap it up until defense counsel already mentioned that he was starting to wrap up anyways. So there is no indication that this testimony was actually cut short in any way. The district court had ample amount of mitigating evidence that was put in front of him, both in the PSR, also in the character letters that the judge reviewed. Defense counsel submitted written arguments and written objections, which the court went through. Defense counsel also provided oral argument about the mitigating evidence, and the district court heard from the defendant himself, and the district court heard from the three witnesses. There was ample opportunity to present whatever information defendant wanted to present, and defendant took advantage of that opportunity. There is nothing that was presented at the hearing about additional information that would have been presented, and there is nothing in defendant's appellate briefs that explain what additional information would have been presented. And defense counsel hasn't presented any information here today about what additional information would be presented. Beyond the factual issue, there's also a legal issue here. Defendant never objected, so the government's position is that plain error view applies. And no circuit court in the government's research has found that Rule 32I-4A provides defendant a right to call character witnesses at sentencing, and certainly not a right to call unlimited character witnesses at sentencing. So even if there was an error, that error was not plain. In addition, defendant has not presented or explained what he would have presented further, so there is no effect on his substantial rights. If your honors have no further questions, then the government would rest on its brief. Well, Ms. Pucci, I think the concern perhaps of this judge is the climate that's created when a judge says briefly and wrap it up, and speaks of practice in one division versus another. You can see from just reading that record where one could get some concern about the speed that might attend. Perhaps this isn't that case, but it seems to come off the record a little bit to me. I understand. If you take the judge's comments, perhaps taking them out of the record and just viewing them in isolation outside of this case, I can see where your honors' concern would be. I do practice in Rockford. I don't believe the judge has a standing order on this issue. Well, that would be surprising, I would think. How could you have a standing order on all criminal cases involving the number of witnesses and mitigation? That seems to me to be a problem. My point being that I don't think there is a hard and fast rule. As your honors are probably aware, oftentimes judges say things, wrap it up, keep it brief, and lawyers are able to get the information in that they need to be brought in. It's not until a judge starts cutting you off that you know that you really need to stop. That's partly what these lights are up here for. We can continue going even if we're told to stay brief. A lawyer knows how to get the information out. There is no evidence in the record that this guy, the defense counsel, was actually stopped from preventing anything. He did exactly what he said he was going to do, regardless of what the comments the judge made. I should point out one additional thing that I want to clarify. Neither the judge nor the government ever commented on the judge's schedule for the rest of the day. The only person who commented that the judge had a hearing in 25 minutes was defense counsel. Well, he must have been informed in some fashion about that. There's a daily calendar that's put out, but the judge never pressured anyone that we needed to get through the hearing. Hearings commonly run over and into the next hearing. Thank you. If the court has no further questions, the government would ask that the court affirm the defendant's conviction and sentence. Thank you, Ms. Beasley. Ms. Christensen has any time left? If you have no time left, I'll give you a minute if there's something you would like to say. I'll address probably the most important point. I've quoted the original colloquy between the court and the defense counsel on page 10 of my brief. It's in the appendix at page 21 and 22. And it's very clear that the court's not going to let this go on further and says immediately, I understand what you want to do. Cut it down. You don't have to go through everything. Again, as far as me presenting evidence about what would have been at sentencing, I can't do that. I'm sure I could have added affidavits, but our system of justice does not allow me to present additional evidence on appeal. I have the record as it is, and if the government's saying that the first time defense counsel knew about this rule was at sentencing, that is a problem. I don't have that in the record, so I can't make a separate argument about it, but that is something for this court to consider, is the notice that defense counsel had regarding the mitigation witnesses. Unless the court has questions, I ask you to reverse and remand for resentencing. Thank you, Ms. Christensen. Thank you. And our thanks indeed to both counsel. The case will be taken under advisement. That completes the call of the day. Therefore, the court will arise until the next.